IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No: 13-cv-00866-RM-CBS

VIAERO WIRELESS a/k/a
NE COLORADO CELLULAR, INC.

        Plaintiff,

v.

NOKIA SOLUTIONS NETWORK US LLC,

        Defendant.

**ORDER ON DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND TO DISMISS OR STAY THIS PROCEEDING**

Magistrate Judge Craig B. Shaffer

        THIS MATTER comes before the court on Defendant Nokia Solutions Network US LLC's ("NSN") Motion to Compel Arbitration and To Dismiss or Stay This Proceeding ([doc. #17] [hereinafter "Motion"]) filed on May 31, 2013. Plaintiff Viaero Wireless ("Viaero") filed a Response in Opposition to Defendant's Motion and Brief to Compel Arbitration and to Dismiss or Stay This Proceeding ([doc. #24] [hereinafter "Response"]) on June 21, 2013. NSN filed a Reply in Support of their Motion to Compel Arbitration ([doc. #30] [hereinafter "Reply"]) on July 12, 2013.

        Pursuant to the Order of Reference to Magistrate Judge (doc. #8) dated April 8, 2013, this matter is referred to the Magistrate Judge to, *inter alia*, "hear and determine pretrial matters, including discovery and other non-dispositive motions," and to "conduct hearings, including evidentiary hearings, and submit proposed findings of facts and recommendations for rulings on dispositive motions." The court heard oral argument on the pending motion during a hearing on

1

July 24, 2013. I have carefully reviewed the parties' briefs and attached exhibits, the entire case file, and the applicable law, and considered the arguments presented at the July 24, 2013 hearing. For the reasons set forth below, the court will grant NSN's Motion to Compel Arbitration and stay this matter pending further proceedings.

## BACKGROUND

The following facts are taken from Viaero's Complaint and the parties' submissions. Viaero is a wireless telecommunications service provider for personal, business, government and emergency communications subscribers in rural Colorado, Nebraska, Wyoming and Kansas. (Compl. ¶ 5.) Over the past decade, Viaero implemented various systematic upgrades to enhance subscriber services by purchasing equipment and services from third parties. In 2003, Viaero purchased from NSN equipment to operate a second generation ("2G") wireless network pursuant to a Supply Contract dated February 25, 2003 (doc. #17-1), and technical services and support in connection with the 2G network pursuant to a Care Agreement dated March 19, 2003 (doc. #17-6) (collectively "2003 Agreements".) The Supply Contract had a 6-year term and an effective date of March 19, 2003, and by its own terms would expire on March 19, 2009. The Care Agreement also had a 6-year term, expiring on May 31, 2009.

The 2003 Agreements each contain an identical dispute resolution provision stating:

> The Parties agree that any dispute under this Agreement will first be submitted to a higher authority within each company for possible resolution and/or mediation. A professional mediator may be selected by the parties if either party so elects. If mediation is not successful within 10 days, either party may submit the dispute to binding arbitration governed by the Commercial Arbitration Rules of the American Arbitration Association (including limited scope expedited discovery if either party so requests). Costs of mediation and arbitration will be split 50-50 by the parties. In the event of arbitration, the arbitrators [sic]

2

>decisions shall be final and binding. The location for the arbitration shall be Denver, Colorado.[1]

Further, the 2003 Agreements contain provisions allowing either party to propose term extensions through amendments or additions. Viaero alleges that the parties executed two amendments, extending the 2003 Agreements for two discrete periods from March 19, 2009 to September 19, 2009 and from June 30, 2010 to December 31, 2010. *See* Response at 6. NSN contends that the parties executed three amendments, extending the 2003 Agreements for a continuous period from March 19, 2009 to December 31, 2010. *See* Motion at 6. Additionally, the parties executed a modification to the Supply Contract on January 31, 2006.

In June 2009, NSN sent Viaero information about purchasing additional equipment and transitioning the 2G system to a third generation ("3G") system. Subsequently, Viaero purchased additional equipment and services in late 2009, 2010 and 2011. In mid-2011, Viaero commenced a "limited, non-commercial trial" of the additional equipment and services. Viaero alleges that the new equipment did not perform satisfactorily and NSN's services did not meet Viaero's upgrade goals.

Viaero filed this lawsuit on April 3, 2013, seeking damages from NSN for "deficient and nonconforming telecommunications equipment, software, and services Viaero required to transition its wireless network from second generation to third generation or '3G' technology." Viaero's Complaint asserts claims for breach of contract (First Claim for Relief), breach of express warranties (Second Claim for Relief), breach of implied warranties (Third Claim for Relief), unjust enrichment (Fourth Claim for Relief), and negligent misrepresentation (Fifth Claim for Relief). On May 31, 2013, NSN filed the present motion, arguing that Viaero's claims all arise out of and are subject to the 2003 Agreements and the mandatory arbitration clause.

---

[1] *See* Supply Contract §14.1 [doc. #17-1] and Care Agreement §10.2 [doc. # 17-6].

NSN essentially argues that the arbitration clause is enforceable under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* because Viaero consented to the terms and conditions of the 2003 Agreements and amendments. Viaero's Response contends that the 2003 Agreements do not govern the sale and purchase of 3G equipment. Additionally, Viaero asserts that the arbitration clause of the 2003 Agreements expired contemporaneously with the terms of the agreements, and therefore no valid arbitration agreement existed between the parties for any sale post-expiration of the 2003 Agreements.

## ANALYSIS

As a threshold matter, this court must address its authority under 28 U.S.C. § 636. A review of the case law reveals that district courts have reached different conclusions on whether motions to compel arbitration are dispositive for purposes of 28 U.S.C. § 636(b)(1). *Compare Wilken Partners, L.P. v. Champps Operating Corp.*, 2011 WL 1257480, at *1 (D. Kan. April 4, 2011) (noting that "district courts that have considered the nature of an order to stay proceedings pending arbitration and to compel arbitration have concluded that these are non-dispositive orders") and *Coxcom, Inc. v. Egghead Telecom, Inc.*, 2009 WL 4016629, at *1 (N.D. Okl. September 11, 2009) (suggesting that "[c]ourts generally regard a motion to compel arbitration either as a case dispositive matter or a matter not within the statutory authority of a U.S. Magistrate Judge to resolve by Order"). *See also Chen-Oster v.Goldman, Sachs & Co.*, 785 F. Supp. 2d 394, 399 n.1 (S.D.N.Y. 2011) (finding persuasive those cases concluding that motions to compel are not case-dispositive) (reversed and remanded on other grounds) and *BBCM, Inc. v. Health Systems International, LLC*, 2010 WL 4607917, at *1 n.1 (N.D. Iowa November 4, 2010) (the magistrate judge, after noting a split of authority, issued a report and recommendation "out of an abundance of caution").

Unfortunately, the Tenth Circuit has not weighed in on this precise issue. Absent controlling authority, I am guided by Magistrate Judge Bostwick's analysis in *Jackman v. Jackman*, 2006 WL 3792109, at *1-2 (D. Kan. December 21, 2006). There, as in this case, the arbitration provision in question explicitly stated that arbitration would be governed by the FAA and that judgment on any arbitration award may be entered by any court of competent jurisdiction. The arbitration provision in the 2003 Agreements also acknowledges that arbitration "shall be final and binding" and will be "governed by the Commercial Arbitration Rules of the American Arbitration Association." In *P & P Industries, Inc. v. Sutter Corp.*, 179 F.3d 861, 866-67 (10th Cir. 1999), the Tenth Circuit held that a district court has the authority to confirm an arbitration award pursuant to Section 9 of the FAA where the parties "have agreed, explicitly or implicitly, that any eventual arbitration award shall be subject to judicial confirmation." That implicit consent may be evidenced by the parties' acknowledgment that the arbitration shall be final and binding, or by their agreement that the arbitration shall be governed by the rules and procedures of the American Arbitration Association. *Id.; see also Will v. Parsons Evergreene, LLC*, 2011 WL 2792398, at *1 (D. Colo. July 15, 2011) (concluding that the district court was the appropriate forum from which to obtain an order confirming an arbitration award where the parties' arbitration agreement stipulated that the arbitration award would be final and binding, and that judgment on the award "may be entered in any federal or state court having jurisdiction"). "[B]ecause an Article III judge will ultimately be required to confirm, modify, or vacate any arbitration award, the order to stay proceedings and compel arbitration is non-dispositive and is within the magistrate's authority." *Jackman*, 2006 WL 3792109, at *2; *see also Powershare, Inc. v. Syntel, Inc.,* 597 F.3d 10, (1st Cir. 2010) (holding

that review of an arbitration award is within a district court's jurisdiction; therefore, a motion to compel arbitration is non-dispositive).

The Tenth Circuit has held that a motion may be considered dispositive for purposes of 28 U.S.C. § 636(b)(1) if it has an "identical effect" as one of the motions excepted in that statute. *First Union Mortgage Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000), citing *Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1462 (10th Cir. 1988). Measured by that standard, I find that the instant Motion is non-dispositive, as an Article III judge ultimately will be required to confirm, modify or vacate any arbitration award involving the parties to this action.[2] *Cf. All Saint's Brands, Inc. v. Brewery Group Denmark, A/S*, 57 F. Supp.2d 825, 833 (D. Minn. 1999); *Herko v. Metropolitan Life Insurance Co.*, 978 F. Supp. 141, 142 n.1 (W.D.N.Y. 1997).

Moving to the merits of the pending motion, I must consider first the question of arbitrability. *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.,* 157 F.3d 775, 779 (1998). As discussed by the parties, this threshold issue is the source of substantial confusion – the term arbitrability can refer to the existence of a valid and enforceable arbitration agreement between parties as well as the scope of an arbitration agreement. The Supreme Court set forth the fundamental principles of arbitration jurisprudence in *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543 (1964), *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395 (1967), and *AT&T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643 (1986). Review of these decisions reveals two distinct legal issues for the court to consider: (1) whether Viaero and NSN entered into a contractually valid arbitration agreement; and (2) whether this specific dispute falls within the scope of the arbitration agreement. Viaero's Response raises both issues.

---

[2] Should the district judge reach a different conclusion as to the applicability of 28 U.S.C. § 636(b)(1)(A), this decision may be reviewed *de novo* pursuant to Fed. R. Civ. R. 72(b)(3).

6

*Wiley, Prima Paint and AT&T* establish that if a party objects to the existence of a valid arbitration agreement, the court, without exception, must decide this issue. *AT&T,* 475 U.S. at 648-64. The duty to arbitrate is created by contract. Thus, where the validity of the arbitration agreement itself is challenged, that contract cannot give any power to the arbitrator. A party "cannot be compelled to arbitrate if an arbitration clause does not bind it at all." *Wiley,* 376 U.S. at 547.

As the Court held in *Prima Paint,* the Federal Arbitration Act requires that a court must be "satisfied that the making of the agreement for arbitration … is not in issue" prior to ordering a party to arbitration. *See* 9 U.S.C. § 4; *Prima Paint,* 388 U.S. at 403. Indeed, any challenge to the existence, validity or enforceability of the arbitration agreement is an issue related to the making of that agreement. In order for NSN to invoke the FAA to compel Viaero to arbitrate, I must first be satisfied that there is a valid, binding and enforceable agreement between the parties. Assuming the court finds such an enforceable agreement, the issue becomes what is the scope of authority that the parties have bestowed upon the arbitrators. Where the court finds that parties have clearly and unmistakably provided the arbitrator with the authority to determine whether a particular issue is within the scope of the arbitration agreement, that issue should be decided by the arbitrators. *AT&T,* 475 U.S. at 649.

Here, the parties disagree over the arbitrability of their dispute based on their contractual and business history. There is no dispute, however, that the 2003 Agreements contain an arbitration clause that is broad in scope. Viaero insists that the agreement to arbitrate is unenforceable because the equipment and services purchased in this dispute do not "arise under" the 2003 Agreements, "but rather were made by separate purchase orders never specifically incorporated" into the Agreements. Additionally, Viaero asserts that the 2003 Agreements had

7

expired prior to the purchases at issue and the right to arbitrate does not survive the expiration date. NSN argues the arbitration clause in the 2003 Agreements is fully enforceable and each of Viaero's claims is subject to its provisions. *See* Motion at 7.

NSN maintains that the common law presumption in favor of arbitration is controlling in this case. Courts have "long recognized and enforced a liberal federal policy favoring arbitration agreements," and "[u]nder this policy, the doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Daugherty v. Encana Oil & Gas (USA), Inc.*, 2011 WL 2791338, at *3 (D. Colo. July 15, 2011) (quoting *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004)). Under the FAA, a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law for the revocation of any contract." 9 U.S.C. § 2. Section 4 states, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Accordingly, where a valid arbitration agreement covering a dispute exists between the parties, the FAA mandates a stay of judicial proceedings. 9 U.S.C. § 1, *et seq.* However, "when the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away." *Riley,* 157 F.3d 775, 779 (10th Cir. 1998) (citations omitted).

In *Riley,* the court considered the post-contract survival of an agreement to arbitrate:

> Under the federal common law of arbitrability, an arbitration provision in a contract is presumed to survive the expiration of the contract unless there is some express or implied evidence that the parties intend to override the presumption: "In short, where the dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication." Thus, when a dispute arises under an expired

> contract that contained a broad arbitration provision, courts must presume that the parties intended to arbitrate their dispute. This is so even if the facts of the dispute occurred after the contract expired.

*Id.* (internal citation omitted); *see also GATX Mgmt. Servs., LLC v. Weakland,* 171 F. Supp. 2d 1159, 1164 (D. Colo. 2001) (holding an arbitration clause in an employment contract survived termination of employment when the action complained of related to the contract). However, this presumption falls away when (1) the dispute does not arise under the expired agreement; or (2) the parties expressly or clearly imply an intent to terminate the arbitration clause with the underlying contract. *Id.* at 781; *see also United Food & Commercial Workers Int'l Union v. Gold Star Sausage Co.,* 897 F.2d 1022, 1026 (10th Cir. 1990).

The *United Food* court held that a dispute is said to arise under a previous contract when it "involve[s] rights which to some degree have vested or accrued during the life of the contract and merely ripened after termination, or relate to events which have occurred at least in part while the agreement was still in effect." *United Food,* 897 F.3d at 1022, 1024-25 (10th Cir. 1990). In subsequent opinions, the Tenth Circuit explained that a court should first classify the arbitration provision as broad or narrow, then determine if the dispute is "over an issue that is on its face within the purview of the clause," or conversely involves a peripheral matter. *Cummings v. FedEx Ground Package Sys., Inc.* 404 F.3d 1258, 1261 (10th Cir. 2005). If the arbitration provision is narrow, peripheral matters generally do not arise under a previous contract. On the other hand, peripheral matters in broad provisions do in fact arise under a previous contract. *Id.*

Viaero's claim that the purchase orders for 3G equipment are wholly independent contracts with no arbitration obligation is unavailing. By its very terms, the 2003 Agreements' arbitration provision extends to "any dispute under this Agreement …," and therefore, the presumption in favor of arbitration extends to peripheral matters relating to the parties'

9

obligations. *Id.* Notwithstanding this presumption, the additional purchase orders of new equipment are not peripheral to the 2003 Agreements. The parties contemplated and accounted for technology changes to include systematic upgrades from 2G to 3G. Section 1.5 of the Supply Contract indicates an understanding that modifications and new versions of the equipment, software or services would likely occur throughout the duration of the contract term. Furthermore, Section 1.6 created "the option to order additional quantities of [e]quipment , [s]oftware and [s]ervices for expansion of its [s]ystem beyond the capacity and number of elements contracted for" in the Supply Contract. As a result, the 3G technology equipment and services upgrade issue arose, at least in part, while the 2003 Agreements were still in effect. [3]

Here, I find no evidence of an intent, clear or express, to revoke the arbitration provision of the 2003 Agreements. Viaero asserts that the arbitration provision is limited solely to disputes involving 2G technology. I find this argument unpersuasive. An examination of the amendments to the 2003 Agreements provides no evidence of an intent to repudiate post-expiration arbitrability. Moreover, the purchase orders that Viaero claims are new contracts with no arbitration provision do not mention whatsoever an intent of either party to waive the arbitration clause of the 2003 Agreements.

In sum, I find that because the parties did not expressly or clearly imply an intent to revoke the arbitration provision and this dispute arises under the 2003 Agreements, the arbitration provision survived the expiration of the 2003 Agreements and amendments.

Having found an enforceable arbitration agreement between the parties, I must next address the scope of authority Viaero and NSN have bestowed on the arbitrator. In *AT&T,* the Supreme Court stated, "[u]nless the parties clearly and unmistakably provide otherwise, the

---

[3] The Court notes that the parties executed multiple amendments and an addendum contemporaneously with discussions relating to 3G upgrades.

question of whether the parties agreed to arbitrate [a particular grievance] is to be decided by the court, not the arbitrator." *AT&T,* 475 U.S. at 649 (1986).

The 2003 Agreements' arbitration provision requires that "any dispute under this Agreement will first be submitted to a higher authority within each company for possible resolution and/or mediation." If mediation is not successful, disputes are submitted to "binding arbitration governed by the Commercial Arbitration Rules of the American Arbitration Association" (AAA). (Supply Contract §14.1; Care Agreement §10.2.) NSN relies on this court's holding in *Pikes Peak Nephrology Assocs., P.C. v. Total Renal Care, Inc.,* 2010 WL 1348326, at *5 (D. Colo. March 30, 2010), insisting that an arbitrator must decide issues of arbitrability.[4] NSN focuses on the parties' incorporation of the AAA rules, which grant an arbitrator the authority to rule on objections relating to scope and jurisdiction. Much like the Plaintiffs in *Pikes Peak,* Viaero contends that incorporation of these rules does not conclusively grant an arbitrator such authority. To the contrary, I find that because the parties incorporated the AAA rules into their 2003 Agreements, they have clearly and unmistakably provided an arbitrator with the authority to determine whether this dispute is within the scope of the arbitration agreement. *Pikes Peak,* 2010 WL 1348326 at *7 (D. Colo. March 30, 2010). Therefore, the court lacks jurisdiction to determine the scope of the arbitration provision of the 2003 Agreements.

## CONCLUSION

For the foregoing reasons, this court finds the arbitration provision in the 2003 Agreements valid and enforceable and that the parties have unmistakably empowered an arbitrator with the authority to determine whether this dispute falls within the scope of the

---

[4] Arbitrability in this instance refers to the scope of the arbitration agreement.

provision. Accordingly, this court will GRANT NSN's Motion to Compel Arbitration (doc. #24) and stay this matter pending further proceedings.

DATED this 25th day of September, 2013.

BY THE COURT:

s/ Craig B. Shaffer
United States Magistrate Judge